**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

NATHAN ROWAN, individually and
on behalf of all others
similarly situated,

        **Plaintiff,**

           v.

BROCK PIERCE,

        **Defendant.**

      **CIVIL NO. 20-1648 (RAM)**

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is Plaintiff Nathan Rowan's ("Rowan" or "Plaintiff") *Renewed Motion for Class Certification* ("*Motion to Certify*" or "*Motion*"). (Docket No. 196). For the reasons set forth below, the Court **DENIES** Plaintiff's *Motion*.

## I.    BACKGROUND

### A. Procedural History

    On November 16, 2020, Rowan filed a *Complaint* against former independent presidential candidate Brock Pierce ("Pierce" or "Defendant"). (Docket No. 1). Subsequently, Rowan filed an *Amended Complaint* on July 12, 2021. (Docket No. 35). Plaintiff claims Pierce violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by sending pre-recorded messages to promote his campaign to consumers' phone numbers, including Plaintiff's, without their consent. Id. at 6-7.

On October 11, 2022, Plaintiff moved to certify a class action. (Docket No. 73). Subsequently, the parties filed various other motions and continued to pursue discovery. On March 24, 2023, Defendant filed a *Motion for Summary Judgment*, which the Court denied in part on September 1, 2023. (Docket Nos. 153 and 192). The Court ordered Plaintiff to refile his motion for class certification because the original class-certification motion contained matters largely repeated in the summary judgment motion and because fact discovery closed while the original class certification was pending. (Docket No. 194).

On September 15, 2023, Rowan filed the instant *Motion*. (Docket No. 196). He seeks to certify a class of plaintiffs whose mobile numbers appear in voter data that the Pierce campaign obtained from a company called Aristotle and who received prerecorded voicemails on their cellphones from one or more of six identified phone numbers between October 28, 2020, and Election Day 2020. Id. at 2, 7.

On September 29, 2023, Pierce filed an *Opposition to Plaintiff's Renewed Motion for Class Certification* ("*Opposition*"). (Docket No. 201). Defendant maintains that the Court should deny certification because the *Motion* fails to meet Fed. R. Civ. P. 23's requirements. First, Pierce argues that the class is not ascertainable. Id. at 13. Defendant contends that any non-AT&T

members in Plaintiff's class cannot be identified and that Plaintiff's experts committed various analytical errors. Id. at 16-24. Next, Pierce asserts that Plaintiff's proposed class is insufficiently numerous and that Rowan would be an atypical and inadequate class representative. Id. at 24-29. Finally, Defendant argues that the issues among the proposed class members are insufficiently common or predominating, and that a class action is not a superior method for litigating the putative class members' claims. Id. at 29-36.

On October 18, 2023, Rowan filed a *Reply in Support of His Motion For Class Certification* ("*Reply*"). (Docket No. 207). Plaintiff first moves to strike the declaration of the expert that Defendant cites in his *Opposition*, arguing that it was untimely filed. Id. at 2. Plaintiff then recapitulates the analysis of his own experts and addresses Defendant's argument that the proposed class does not satisfy Rule 23. Id. at 2-9. While Plaintiff deals directly with most of the objections to his experts' analysis, he maintains that some of these issues should be resolved by a jury rather than the Court. Id. at 3-4.

On October 27, 2023, Pierce filed a *Surreply to Plaintiff's Renewed Motion for Class Certification*. (Docket No. 213). Defendant opposes Plaintiff's motion to strike the declaration of

his expert and repeated his arguments for why certification should be denied. Id.

The Court ordered that the parties file a joint motion to set a class-certification hearing. (Docket No. 215). The parties then averred that live testimony was not necessary, and the Court deemed the issue of class certification submitted without a hearing. (Docket Nos. 216 and 217).

**B. The Parties' Experts**

Among his three experts, Rowan relies primarily on the opinions of Aaron Woolfson ("Woolfson"). (Docket Nos. 178-1, 178-2 and 196 at 3-4). During discovery, Plaintiff obtained AT&T records showing calls from nine different phone numbers during the period of October 26 through November 3, 2020. (Docket No. 196 at 3). Rowan also obtained a list of voter cellphone numbers to which the Pierce campaign allegedly sent prerecorded messages (the "Aristotle list"). Id. at 5. Plaintiff maintains that Woolfson was able to compare the AT&T call records with the Aristotle list and identify which calls were prerecorded messages sent by the Pierce campaign. Id. at 3-6.

Pierce's *Opposition* relies on the opinion of his own expert, David Kalat ("Kalat"), and cites extensively to Kalat's declaration dated September 29, 2023 ("Kalat Declaration"). *See* (Docket Nos. 201 at 12 and 201-6). Kalat's opinion is that Woolfson

made various mistakes in his analysis of the AT&T call records. (Docket No. 201 at 12).

First, Kalat opines that Woolfson failed to account for differences in the elapsed times marked for each call. Id. at 16. Second, Kalat criticizes Woolfson for disregarding indications that the calls involved a voicemail-transmission technology that is different than what the Pierce campaign likely used. Id. at 18. Third, Kalat notes that the AT&T records show calls to foreign countries and to numbers not on the Aristotle list. Id. at 20. Fourth, Kalat avers that Defendant's expert improperly considered call records with a "Service Terminated" notation. Id. at 21. Lastly, Kalat rejects Rowan's assertion that the cellphone numbers in the AT&T records can be accurately matched with the names of their users at the time of the alleged calls in 2020. Id. at 22.

## II.  LEGAL STANDARD

When a party moves to certify a putative class action, he "bears the burden of 'affirmatively demonstrat[ing] his compliance' with the Rule 23 requirements." In re Nexium Antitrust Litig., 777 F.3d 9, 18 (1st Cir. 2015) (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013)). Rule 23 provides that a member of a class may sue "on behalf of all members" if certain requirements are met. Fed. R. Civ. P. 23(a). First, all class actions must satisfy the prerequisites of "**numerosity,**

commonality, **typicality**, and **adequacy** of representation." In re Nexium, 777 F.3d at 17 (emphasis added) (citations omitted). Second, in cases such as this one, the Court must find that "the questions of law or fact common to class members **predominate** over any questions affecting only individual[s]" and that "a class action is **superior** to other available methods" of resolving the dispute. Fed. R. Civ. P. 23(b)(3) (emphasis added).

Additionally, the First Circuit has identified requirements that are implicit in Rule 23. *See* In re Nexium, 777 F.3d at 18-19. Most important here, a class must be definite. *See* id. at 19. At minimum, this requires that the class definition "allow the class members to be ascertainable" by "reference to objective criteria." Id. (quoting 1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:1, Westlaw (database updated Nov. 2023)). The requirement is therefore usually referred to as the "ascertainability" requirement. *See, e.g.*, Matamoros v. Starbucks Corp., 699 F.3d 129, 139 (1st Cir. 2012); Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000); Loughlin v. Vi-Jon, LLC, 2024 WL 1347092, at *9 (D. Mass. 2024).

In the First Circuit, ascertainability requires not just that the proposed class be well defined but also that there be administratively feasible means of determining who is in it. *See* In re Nexium, 777 F.3d at 19 (citing Carrera v. Bayer Corp., 727

F.3d 300, 306 (3d Cir. 2013)); <u>Thrower v. Citizens Disability,
LLC</u>, 2022 WL 3754737, at *2-3 (D. Mass. 2022); <u>Sandoe v. Boston
Sci. Corp.</u>, 333 F.R.D. 4, 8-9 (D. Mass. 2019).

Importantly, "[t]he Rule 23 requirements are more than a 'mere
pleading standard.'" <u>Hunter v. Time Warner Cable Inc.</u>, 2019 WL
3812063, at *9 (S.D.N.Y. 2019) (quoting <u>Wal-Mart Stores, Inc. v.
Dukes</u>, 564 U.S. 338, 350 (2011)). A trial court must perform a
"rigorous analysis" to determine whether a putative class action
satisfies Rule 23. <u>Wal-Mart Stores</u>, 564 U.S. at 350-51 (citations
omitted). Often, that rigorous analysis "will entail some overlap
with the merits of the plaintiff's underlying claim." <u>Id.</u> at 351.

### III. DISCUSSION

#### A. <u>Motion to Strike</u>

As a preliminary matter, the Court considers Plaintiff's
motion to strike the September 29, 2023, Kalat Declaration relied
upon by Defendant in his Opposition. (Docket Nos. 201-6 and 207 at
2). Plaintiff argues that the Kalat Declaration is untimely per
the Court's scheduling order. (Docket No. 207 at 2). The Court
notes that on March 28, 2023, Defendant moved for an extension
until March 31, 2023, to serve its expert rebuttal reports. (Docket
No. 157). The Court granted that motion, and any rebuttal reports
were due by the end of March 2023. (Docket No. 163). Accordingly,
Plaintiff's motion to strike the Kalat Declaration, (Docket No.

201-6), is **GRANTED.** To the extent that the Court credits arguments in Defendant's Opposition that rely on Kalat's analysis, the Court does so only if those arguments are supported by Kalat's previous opinions. See, e.g., (Docket Nos. 166-2, 166-6 and 166-8).

## B. **Proposed Class Definition**

Plaintiff has already proposed and discarded at least two different class definitions. *See* (Docket Nos. 1 at 7 and 73 at 7). He now proposes a third:

> All persons in the United States who (1) were called one or more times (2) from October 28 2020 to November 3, 2020 (3) from telephone number (206) 201-0668, (208) 644-8751, (307) 228-7780, (385) 331-1930, (651) 360-1815, or (845) 447-9504 (4) on their cellular telephone number (5) using a pre-recorded voice message, and (6) whose cellular telephone number appears in records purchased from Aristotle.

(Docket No. 196 at 7).

Yet even the above class is not Plaintiff's final proposal. In his *Reply*, Plaintiff states that he "would not object to modifying the class definition" to contain only persons for whom Plaintiff has obtained call records. (Docket No. 207 at 3). Strikingly, Plaintiff's above-quoted class definition extends geographically to "[a]ll persons in the United States," but he has obtained call records only for AT&T subscribers. (Docket No. 196 at 3-8, 11). As Defendant notes, AT&T is one of multiple phone

carriers in the United States. (Docket No. 201 at 14). Moreover,
discovery is closed in this case. (Docket No. 194).

When a would-be class representative seeks to certify a broad
class for which he will have trouble proving his legal claims, the
court may limit the class to a more appropriate subset. *See* Andrews
v. Bechtel Power Corp., 780 F.2d 124, 130-131 (1st Cir. 1985); *see
also* Califano v. Yamasaki, 442 U.S. 682, 689, 702-03 (1979)
(affirming district court's exclusion of certain members from
proposed class and noting that "most issues arising under Rule 23"
are "committed in the first instance to the discretion of the
district court"). Accordingly, in light of Plaintiff's statement
of non-objection, and given that it is unlikely that he could prove
injury to members other than those for whom he has call records,
the Court will construe the *Motion* as seeking certification of a
smaller class:

> All persons in the United States who (1) were
> called one or more times (2) from October 28,
> 2020 to November 3, 2020 (3) from telephone
> number (206) 201-0668, (208) 644-8751,
> (307) 228-7780, (385) 331- 1930, (651) 360-
> 1815, or (845) 447-9504 (4) on their cellular
> telephone number (5) using a pre-recorded
> voice message, (6) whose cellular telephone
> number appears in records purchased from
> Aristotle, and **(7) who were AT&T subscribers
> at the time of the calls.**

Nevertheless, Plaintiff has failed to show that even this
narrower class satisfies the certification requirements of Rule

23. As discussed below, Plaintiff has not satisfied the requirements of numerosity, ascertainability, or adequacy of representation. Because each of these is necessary for certification, the Court need not consider whether the other Rule 23 requirements are met.

### C. **Plaintiff Has Not Established Numerosity**

Rule 23 requires that a certified class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this numerosity requirement, a plaintiff "must proffer some evidence of the numbers of members in the purported class, or at least a reasonable estimate." Saad Maura v. Scotiabank P.R., 328 F.R.D. 14, 21 (D.P.R. 2018) (citation omitted); *see also* Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987) (placing burden of proving numerosity on plaintiff); Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (requiring plaintiff to demonstrate existence of at least forty class members). Though a plaintiff need not provide a precise number of class members, mere speculation as to the class size is insufficient. Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009) (citation omitted); Collazo v. Calderon, 212 F.R.D. 437, 442 (D.P.R. 2002) (citation omitted).

### 1. Plaintiff's evidence does not support his estimated total number of class members

Rowan fails to meet his burden of establishing a reasonable estimate of potential plaintiffs. Plaintiff asserts that there are 153,159 unique cellular numbers that received prerecorded voicemails from Pierce's presidential campaign. (Docket No. 196 at 1, 5, 9). However, the evidence proffered by Plaintiff does not support his explanation of how he reached that number.

Plaintiff states that the number "153,159" comes from taking the total number of calls estimated by his expert Woolfson and paring it down to accommodate various objections from Defendant's expert, Kalat. Id. at 5-6. Plaintiff explains that Woolfson earlier identified 157,598 unique numbers that received voicemails from the Pierce campaign. Id. at 5. But after factoring in Kalat's objections, Plaintiff concedes that "Mr. Woolfson's analysis can be further limited" to 153,159 unique numbers. Id.

To support this calculation, Plaintiff cites to two reports produced by his own expert, Woolfson, and one by Defendant's expert Kalat. Id. at 6. However, none of these reports mentions the new number "153,159." Nor do these reports explain how changing Woolfson's number to accommodate Kalat's objections results in a new total of 153,159. See id.; (Docket Nos. 178-1 ¶¶ 42-43; 178-2 ¶¶ 15-16 and 166-2 ¶¶ 12-21, 32-38).

In addition to the expert reports themselves, Rowan cites to a handful of exhibits attached to Woolfson's reports. (Docket No. 196 at 6). These exhibits reflect various outputs of Woolfson's analysis and were completed by spring of 2023, well **before** Plaintiff factored in the objections of Defendant's expert. *See* (Docket Nos. 178-1 ¶¶ 42-43 and 178-2 ¶¶ 15-16). Each exhibit reflects tens of thousands of calls, and Rowan explains that he chose not to file them with the Court due to their size. (Docket Nos. 178-1 ¶¶ 42-43; 178-2 ¶¶ 15-16 and 196 at 3 n.1). Instead, Plaintiff invites the Court to request them for in camera review. (Docket No. 196 at 3 n.1). But the Court does not bear the burden of showing that Plaintiff's proposed class is sufficiently numerous; Plaintiff does. *See* Makuc, 835 F.2d at 394; Garcia-Rubiera, 570 F.3d at 460. Offering the Court access to data that might allow the Court to reach a desired conclusion is insufficient to meet that burden. *Cf.* United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders." (citation omitted)).

Plaintiff's failure to show how he reached his new estimated number of class members undercuts his ability to show that he has any reasonable estimate at all. By conceding that some of Kalat's objections to Woolfson's analysis are correct, Rowan admits that the earlier estimated total provided by Woolfson was inaccurate.

Then, having deconstructed his own expert's conclusion, Plaintiff fails to show how his new number, 153,159, is supported by any evidence.

Without Plaintiff explaining why his expert opinions or data compel a particular conclusion, Rowan's argument for certification cannot survive the "rigorous analysis" to which the Court must subject it. Wal-Mart Stores, 564 U.S. at 350-51; *see also* Frompovicz v. Niagara Bottling, LLC, 420 F. Supp. 3d 361, 368 (E.D. Pa. 2019) (numerosity not satisfied where plaintiff "failed to put forth evidence" to support key assumption in his calculation of class size); Sandlin v. Shapiro & Fishman, 168 F.R.D. 662, 666 (M.D. Fla. 1996) (explaining that where plaintiffs "merely rel[ied] on an assertion of large numbers of class members," the court could not "ascertain whether the numerosity requirement ha[d] been satisfied").

**2. Plaintiff does not counter Defendant's objections regarding the elapsed times of the AT&T calls**

Another problem with Rowan's evidence of numerosity is that he fails to answer Pierce's charge that many of the call records examined by Woolfson show time durations longer than the length of the campaign voicemails. Most, if not all, of the AT&T call records show a notation indicating "elapsed time." (Docket No. 178-1 at 10 & n.10). Defendant notes that Plaintiff's experts gave

contradictory testimony about what this refers to. (Docket No. 201 at 16). Plaintiff's expert Glenn Bard ("Bard") testified that the elapsed times show the length of the voicemail left by the caller. (Docket No. 166-7 at 70:14-71:2). But Plaintiff's other expert Randall Snyder ("Snyder") testified that the elapsed times show both the duration of the phone subscriber's outgoing message and the duration of the voicemail. (Docket No. 166-1 at 254:16-255:16).

Defendant, citing to his own expert, Kalat, argues that many of the call records in Woolfson's analysis indicate elapsed times that are longer than the voicemails allegedly sent by the Pierce campaign. (Docket No. 201 at 17-18). Defendant asserts, and Plaintiff does not dispute, that the voicemails at issue in this case ranged from 32 to 43 seconds. (Docket Nos. 166-2 at 13; 201 at 17 and 207 at 4). If Bard is correct that elapsed times show only the length of the voicemails, then any calls with elapsed times of more than 43 seconds are unlikely to have been sent by the Pierce campaign. (Docket Nos. 166-2 at 15-16 and 201 at 17).

On the other hand, if Snyder is correct, then Woolfson's analysis still faces problems. Snyder estimated that an outgoing message usually lasts around 15 seconds. (Docket No. 166-1 at 255:4-5). If he is correct that elapsed times show the duration of the voicemail **and** the outgoing message, then calls with elapsed times of more than 58 seconds are also too long to have been sent

by the Pierce campaign. (Docket Nos. 166-2 at 16 and 201 at 17-
18).

Pierce's expert, Kalat, asserts that Woolfson's analysis
included over 76,000 call records with elapsed times of more than
58 seconds. (Docket Nos. 166-2 at 16 and 201 at 18). Rowan has
explained that Woolfson's estimate of 153,159 class members is
based on records of 255,603 calls. (Docket No. 196 at 5). Thus,
Defendant is arguing that more than 76,000 of the 255,603 calls
lasted too long to have transmitted voicemails from the Pierce
campaign. (Docket No. 201 at 18). If Pierce is correct, then nearly
a third of the calls relied on by Woolfson could not have been
sent by the Pierce campaign.

Pierce makes a similar argument about another 96,000-plus
calls in Woolfson's analysis that show elapsed times of less than
15 seconds. (Docket Nos. 166-2 at 16 and 201 at 17-18). Defendant
argues that it is unlikely that these shorter calls were sent by
the Pierce campaign since, as indicated, its messages ranged from
32 to 43 seconds. (Docket No. 201 at 17-18). Given the number of
records relied on by Woolfson that show durations different than
those of the campaign voicemails, Pierce questions whether **any** of
the AT&T call records reflect voicemails from the Pierce campaign.
(Docket No. 201 at 18).

Rather than disputing Pierce's arguments about the elapsed times, Rowan contends that the disagreement between Woolfson and Kalat should be put to a jury. (Docket No. 207 at 4-5). That is incorrect. It is the trial court's duty, not the jury's, to determine whether an action should be certified as a class action. Fed. R. Civ. P. 23(c)(1)(A) ("[T]he **court** must determine by order whether to certify the action as a class action." (emphasis added)); In re Nexium, 777 F.3d at 17 ("To certify a 23(b)(3) class, the **district court** must undertake a 'rigorous analysis' . . . ." (emphasis added) (citations omitted)). That determination may well overlap with consideration of the underlying claim. Wal-Mart Stores, 564 U.S. at 351. This "preliminary inquiry into the merits," though, is limited to that which is needed "to determine the propriety of certification." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013) (citations omitted).

In support of his jury argument, Plaintiff cites to two inapposite opinions from district courts outside the First Circuit and a single opinion from this district regarding a motion in limine. (Docket No. 207 at 4-5); Goya de P.R., Inc. v. Rowland Coffee Roasters, 2004 WL 5459246 (D.P.R. 2004). That evidentiary ruling, which did not concern a class action, addressed whether an expert's testimony should be excluded as unreliable under Fed. R.

Evid. 702. Goya de P.R. Inc., 2004 WL 5459246, at *1. That holding
is inapplicable here, where Rowan acknowledges that Pierce has not
moved to exclude Woolfson's testimony. (Docket No. 207 at 4).

By failing to put forward any argument for how the elapsed
times in the AT&T call records could be consistent with the
prerecorded voicemails from the Pierce campaign, Rowan waives
objection to Defendant's contention that the 76,000-plus calls
with elapsed times of over 58 seconds and the 96,000-plus calls
with elapsed times of 15 seconds or less cannot have been sent by
the Pierce campaign. (Docket Nos. 201 at 18 and 207 at 4-5); In re
Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 30 n.7
(1st Cir. 2009) (holding that trial court properly deemed as waived
arguments not explained by plaintiff in reply brief); Brown v.
St.-Gobain Perform. Plastics Corp., 2023 WL 9016496, at *4 (D.N.H.
2023) (deeming objections not contained in parties' briefs as
waived). Rowan also waives objection to Pierce's contention that
the high number of discrepant elapsed times casts doubt on whether
the AT&T records obtained by Plaintiff show any campaign calls at
all. (Docket No. 201 at 18).

Without answering these questions about the calls relied on
in Woolfson's analysis, Rowan cannot use that analysis as evidence
that his proposed class is sufficiently numerous. To do so would
amount to speculation. See Collazo, 212 F.R.D. at 442 (requiring

more than speculation to satisfy the numerosity requirement); *see also* Alharbi v. Miller, 368 F. Supp. 3d 527, 546 (E.D.N.Y. 2019) (numerosity not satisfied where plaintiff, seeking to represent class of visa applicants whose visa approvals were wrongly rescinded, failed to account for possibility that proffered data included applicants that were never approved in the first place), *aff'd in part, dismissed in part*, 829 Fed. Appx. 570 (2d Cir. 2020); Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis, 175 F.R.D. 531, 538 (D. Minn. 1997) (finding that evidence of over 9,000 denied housing applications did not show numerosity of illegally denied applications since plaintiff failed to account for applications denied for lawful reasons), *vacated as moot sub nom.*, 168 F.3d 1069 (8th Cir. 1999).

Thus, Rowan fails in two separate ways to meet his burden of showing that numerosity is satisfied: first, by not proffering evidence that supports his calculation of the number of class members; and second, by not responding to a serious objection to his expert's analysis. Without this essential Rule 23 requirement being satisfied, the Court cannot certify the proposed class.

D. **Plaintiff Has Not Shown That the Class Is Ascertainable**

The same reasons that prevent Rowan from satisfying the numerosity requirement also prevent him satisfying the ascertainability requirement. Plaintiff has not provided evidence

that supports his asserted calculation of "153,159" unique class members. (Docket No. 196 at 1). Nor has Plaintiff attempted to explain how his expert Woolfson's analysis can feasibly identify class members when well over half of the call records he relied on show elapsed times longer or shorter than the campaign voicemails. (Docket No. 207 at 4-5). As such, the Court finds that Rowan has not met his burden of showing that the proposed class is ascertainable. *Compare* <u>Thrower</u>, 2022 WL 3754737, at \*2-3 (finding TCPA class ascertainable due to "sufficiently detailed" list of lead sources for customers), *with* <u>Sandoe</u>, 333 F.R.D. 4, 8-9 (finding TCPA class likely not ascertainable where there was no "database linking individual subscribers to phone numbers").

### E. **Plaintiff Has Not Shown That He Is an Adequate Representative**

A class representative must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is important because "[i]f the case is not properly and vigorously conducted, either plaintiffs or defendants or both will suffer the consequences of being bound by the resulting judgment." <u>Andrews</u>, 780 F.2d at 130. Here, the Court finds that Plaintiff would be an inadequate class representative.

As indicated, the Court deems Plaintiff's *Motion*, in conjunction with his *Reply*, to request certification of a class limited to AT&T subscribers. However, Rowan is unqualified to

represent such a class. Rowan is a Verizon subscriber. (Docket No. 196 at 11). Rule 23 is clear that only "**members of a class** may sue" on behalf of the others. Fed. R. Civ. P. 23(a) (emphasis added). Courts and commentators have explained that this class-membership requirement is part of the Rule 23(a)(4) adequacy requirement. *See, e.g.*, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997); Rubenstein, *supra*, § 3:1; Wright & Miller, *supra*, § 1761. Because Plaintiff is not a member of the AT&T-subscribers-only class, he cannot adequately represent it. *See* Gur-Ravantab v. Georgetown U., 345 F.R.D. 1, 7 (D.D.C. 2023) (holding plaintiff could not represent class of university students that paid tuition for Spring 2020 semester when plaintiff himself did not pay (citing Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 156 (1982))).

Even if the Court were to certify Plaintiff's proposed class as written, Plaintiff has demonstrated that he is inadequate to represent such a class. The formulation in Rowan's brief would extend the class geographically to "[a]ll persons within the United States." (Docket No. 196 at 7). The crux of Plaintiff's argument for why this class should be certified is his expert's analysis of call records. Id. at 1. But, as discussed, Plaintiff failed to obtain call records for anyone other than AT&T subscribers. Id. at 3-8, 11. This puts Rowan's chances of proving the injuries of the members in the class, as written, at next to none.

If Plaintiff wanted to represent subscribers to other carriers, he needed to have obtained discovery that could support such an action. Because he did not, he is inadequate to represent them. *See* Andrews, 780 F.2d at 130-31 (affirming that plaintiff was "an inadequate representative of [a] broad class" in part because plaintiff "would have difficulty establishing proof" of the class injuries); McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5th Cir. 1981) (affirming denial of certification where plaintiff failed to engage in discovery); Huang v. Shanghai City Corp, 2022 WL 1468450, at *19, 21 (S.D.N.Y. 2022) (finding plaintiffs' law firm inadequate because it "failed to engage in any discovery to develop an evidentiary record" and "did not take the basic step of trying to determine how many persons would have fallen within the proposed class.").

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion to strike filed at Docket No. 207; strikes from the record the Kalat Declaration at Docket No. 201-6; and **DENIES** Plaintiff's *Renewed Motion for Class Certification* at Docket No. 196.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of April 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE